JAMES PARK, Jr., et al., Respondents, *v.* HARVEY R. PRESTON, et al., Appellants.

In the absence of evidence to the contrary, it is to be assumed that, goods accepted by a carrier for transportation, are taken under the responsibility cast upon the carrier by the common law, save as modified by the statute.

If the goods are lost under circumstances which render the carrier liable by the general rule of law, he must respond unless he can show that there was a special acceptance, equivalent to a contract, which exempts him from the ordinary liability of common carriers in the particular case.

Plaintiffs having been advised by defendants, who were carriers, that they would transport a quantity of iron at a price agreed upon, inclosed to them a delivery order for the iron, with a letter stating that they were to ship the iron to plaintiffs at " Pittsburgh, Pa., per canal to Buffalo and thence per rail, A. V. R. R. Co., at $3 per gross ton, including insurance and all charges." Defendants by means of the delivery order procured the iron and shipped it upon a canal boat, and on completion of the shipment signed a bill of lading which was mailed to plaintiffs, but before it reached them and on the same day the bill of lading was signed the canal boat, with the iron on board, had sunk in the Hudson river. The bill of lading contained a provision exempting the carrier from liability for loss occasioned by " dangers or accidents of navigation while on lakes, rivers or canals." In an action to recover damages for the loss there was no evidence that the parties agreed, before the bill of lading was signed, that the goods were to be carried under a restricted liability, or that the compensation was regulated on that assumption, or that there was any usage or custom that bills of lading on shipments of this char-acter should contain such exemptions. Defendants offered to prove that the boat was sunk by reason of a peril within the exemption, which was rejected. *Held*, no error; that defendants having acted upon the letter and acquired possession of the goods by means of the delivery order, there was apparently a complete contract, and while it might be assumed

that in accordance with the usual course of business a bill of lading would be signed when the iron was shipped, this did not justify an inference that it was open to the defendants to insert therein clauses restrictive of the usual liability of carriers.

(Argued January 24, 1888; decided February 28, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 9, 1885, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

This action was brought against defendants as common carriers, for breach of contract to transport and deliver a quantity of iron. The iron was received at New York by defendants on board the canal boat Richard Collins, bound for Buffalo. On its way up the Hudson river the boat, with the iron on board, was sunk; a part of the iron was lost and the residue greatly damaged.

The remaining facts, so far as material, are stated in the opinion.

*Edward D. McCarthy* for appellants. A bill of lading is both a receipt and a contract. It would, therefore, be irregular to deliver it before shipment. (*The Delaware,* 14 Wall. 600; *Long's Case,* 50 N. Y. 76.) As to any insurance collected or collectible by the owner, he becomes the carrier's trustee, and must, *pro tanto,* make deduction from his claim against the carrier. (*Caleb's Case,* 20 N. Y. 173; *Rintoul's Case,* 21 Blatch. 439.)

*William H. Arnoux* for respondents. The delivery and acceptance of the order and the goods constituted the contract between the parties, which could not be varied by the mailing of a bill of lading containing different provisions, to which plaintiffs had not given their assent. (*Swift* v. *Pac. M. S. Co.,* 106 N. Y. 206, 218; *Bostwick* v. *Balt. & O. R. R. Co.,* 45 id. 712.) It makes no difference whether the bill of lading was received before or after the loss. (*Guillaume* v. *Genl. Trans. Co.,* 100 N. Y. 491.)

ANDREWS, J. It is conceded that if the defendants received and accepted the iron under the responsibilities imposed upon common carriers by the common law, they are liable for the loss of the iron by the sinking of the canal boat on which it was laden in the Hudson river. It is not claimed that the loss was occasioned by the act of God or the public enemy, or by a peril of the sea such as by the common law exempts a carrier from responsibility. The defendants insist that the iron was carried under the terms of a bill of lading which contains a special exception of "dangers or accidents of navigation while on lakes, rivers or canals," and on the trial they offered to prove that the boat was sunk by reason of a peril within the exception. This evidence was rejected on the ground that the bill of lading upon which the defendants rely, was not the contract under which the iron was carried, but that the real contract of carriage was created by the letter of April 20, 1882, addressed by the plaintiffs to the defendants, and the subsequent receipt of the iron by the latter under the delivery order accompanying the letter. It appears that prior to the date of the letter the plaintiffs had purchased or had contracted to purchase the iron just arrived in New York on the ship Lepanto, of one Lombard of Boston. Before the letter was written the plaintiff's agent called on the defendants, who were carriers, and inquired if they would take the iron to Pittsburgh and at what rate, and the defendants agreed to take it at the rate of $3 per ton, including insurance. The letter of April 20th was then addressed by the plaintiffs' agent to the defendants, the body of which is follows: "DEAR SIRS. — We hand you herewith delivery order for 25 tons iron, ex. str. 'Lepanto,' which you are to ship to Mess. Park Brother & Co., Pittsburgh, Pa., per canal to Buffalo, and thence per rail *via* A. V. R. R. Co., at $3.00 per gross ton, including insurance and all charges." It is inferable from the evidence that the delivery order inclosed was drawn by Lombard upon the ship and that on or before the twenty-fifth of April, the defendants by means thereof had procured the iron and laden it upon the canal boat "Richard Collins,"

to be taken by river and canal to Buffalo, on the way to Pittsburg. The defendants on the completion of the shipment, April 25th, signed a bill of lading acknowledging the receipt of the iron on the "Richard Collins," consigned to the plaintiffs at Pittsburgh, Pa., and delivered or inclosed the bill of lading to Lombard. The bill of lading was probably sent to Lombard at Boston by mail, although there is no direct evidence of the fact. Lombard sent the bill of lading to the defendants at Pittsburgh. But before it reached the defendants the "Collins" had sunk with the iron on board in the Hudson river, the disaster happening on the same day the bill of lading was signed, viz., April 25, 1882. It does not appear that the plaintiffs had shipped goods before this by the defendants' line. They had been accustomed to make shipments from New York to Pittsburgh, and the plaintiffs' agent testified, "we always have a written bill of lading for these goods." There is no proof of what exceptions are usually inserted in bills of lading or that the plaintiffs had any information of the forms used by the defendants, nor even that the bill of lading in question was the ordinary and usual contract used in their business.

The defendants, by means of the delivery order, acquired possession of the iron, and having laden it on the "Collins," if nothing else had occurred, there could be no doubt that the letter of April 20th would have regulated the rate and mode of carriage, and that the law would have fixed in other respects the duty and responsibility of the defendants. It was competent, however, for the parties, by contract, to modify the responsibility cast upon common carriers by the common law. Carriers by water are, by the rule of the common law, exempt from responsibility for losses from such perils of the sea as come within the definition of the phrase "Act of God," and this exception exists although the contract is silent upon the subject. Further exceptions have been introduced by statute, in England and in this country. (Angell on Carriers, §§ 166, 223; 3 Kent Com. 216; 9 U. S. Stat. at Large, 635.) It cannot, we suppose, be questioned that in the absence of

evidence to the contrary it is to be assumed that goods accepted. by a carrier for transportation are taken under the responsibility cast upon carriers by the common law, or by the common law as modified by statute. If they are lost, under circumstances which render the carrier liable by the general rule of law, the carrier must respond unless he can show that there was a special acceptance, equivalent to a contract, which exempts him from the ordinary liability of common carriers. in the particular case. (*Dorr* v. *New Jersey Steam Navigation Co.*, 11 N. Y. 485; *Blossom* v. *Dodd*, 43 id. 264; *Madan* v. *Sherard*, 73 id. 330.)

It is insisted that the bill of lading sent by the defendants. to Lombard was the contract. There is no evidence that the parties agreed before the bill of lading was signed that the goods were to be carried under a restricted liability, or that the compensation was regulated upon that assumption, or that there was any usage or custom that bills of lading on shipments of this character should contain the exceptions inserted in the bill in question. The defendants having acted upon the letter of April 20th, and acquired possession of the goods by means of the delivery order inclosed, there was apparently a. complete contract for the carriage of the iron. It may be assumed that it was contemplated that a bill of lading would be signed when the iron was shipped. This would be according to the usual course of business. But we do not perceive that this justifies an inference that it was open to the defendants to insert therein clauses restrictive of the usual liability of carriers, especially in the absence of any evidence of a course of business between the parties, or of any custom or usage sanctioning such an interpretation of the preceding negotiations.

Upon the whole we are of opinion that the case was rightly decided below and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.