RUBENS *et al. v.* LUDGATE HILL STEAMSHIP Co., Limited.

(*Supreme Court, General Term, First Department.*  October 20, 1892.)

1. CARRIERS OF FREIGHT—CONTRACT—LIABILITY FOR DAMAGE.
   In an action against a carrier for damage to goods shipped, it is not necessary to prove a written contract, the law implying, in the absence of such a contract, an obligation to deliver in good condition to the person from whom freight is accepted.

2. SAME—BILL OF LADING.
   Though a bill of lading limiting the liability of the carrier was not delivered to the shipper or his agent at the time of shipment, still, assent to and ratification of it are shown by the fact that, being forwarded to the persons to whose order it provided the goods should be delivered, it was indorsed to the shippers, who thereupon entered the goods at the customhouse without any objection thereto.

3. SAME—LIABILITY FOR NEGLIGENCE—EXEMPTION.
   Under the terms of a bill of lading excepting the carrier from liability for injury from specified causes, "however these or any of them may be brought about; whether any of the perils, causes, or things above mentioned, or the loss or injury arising therefrom, or from any other specified cause, be occasioned by or from any act or omission, negligence, default, or error in judgment of the pilot, master, mariners, engineers, stevedores, or other persons in the service of the ship's owners," etc.,—the carrier is exempt from liability for injury arising from the improper stowage of oil in the same compartment with the goods damaged.

4. SAME—CONSIDERATION FOR EXEMPTION.
   That such a bill of lading shall exempt the carrier, it is not necessary to prove that the consideration of the exemptions was a lower rate of freight than would otherwise have been charged.
   PATTERSON, J., dissents.

Exceptions from circuit court, New York county.

Action by Morris Rubens and Bernard Rubens against the Ludgate Hill Steamship Company, Limited, to recover damages for negligence in the transportation of certain furs.  Verdict for plaintiff.  Defendant moves to set aside verdict, and for new trial, on exceptions taken at the trial, and ordered to be heard in the first instance at general term.  Motion granted.

For decision on appeal by plaintiffs from an order granting a motion to make the complaint more definite and certain, see 2 N. Y. Supp. 30.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Horwitz & Hershfield*, (*Wales F. Severance*, of counsel,) for plaintiffs. *Convers & Kirlin*, (*J. Parker Kirlin*, of counsel,) for defendant.

O'BRIEN, J.   This action was brought to recover damages to certain cases of hatter's fur, owned by the plaintiffs and imported by them in the defendant's steamship the Ludgate Hill.   The merchandise was shipped at Antwerp upon the steamer Planet, with liberty to transship at London upon any other ship belonging to or chartered by the agents of the defendant, and they were brought from London to this port in the Ludgate Hill, and entered at the customhouse under the bills of lading that were originally issued for them upon shipment on board the Planet at Antwerp.   On arrival at the port of New York, 6 of the 93 cases were found damaged by oil when received in the plaintiffs' warehouse.   The plaintiffs offered evidence of ownership, and of delivery of the goods in a damaged condition, and rested, without proving the contract under which they were transported.   A motion was made at the close of the plaintiffs' case to dismiss, upon the ground that the plaintiffs did not prove the contract on which the merchandise was carried, or that the damage occurred to the goods on board the vessel, or that the damage was a breach of the contract under which the merchandise was carried.   This motion was denied, and exception taken.   The defendant then offered in evidence two bills of lading, which it claimed contained the contract under which the merchandise was transported.   Evidence was also offered tending to show that the damage was caused by oil which escaped from barrels stowed in the same compartment with the plaintiffs' goods.   It appeared that plaintiffs' cargo, together with the oil, was stowed in a compartment known as "No. 4 Orlop Deck," which is the middle deck of the steamer, the compartment being about 70 feet long by 45 feet wide.   The vessel sailed from London on the 4th of July, 1887.   Defendant's witnesses testified that strong winds were experienced immediately thereafter, which culminated in a gale on the 8th of July, during which the sea was very rough and high; that the rolling of the vessel in the storm affected the stowage so that the end dunnage fell down, and the barrels were found to have worked loose in the tiers, and to have sprung a leak.   The cargo was redunnaged at sea, but the damage to plaintiffs' merchandise was not ascertained until arrival at New York.

At the close of the case, a motion was made that a verdict be directed for the defendant upon the ground that the case rested upon an express contract; that the damage referred to in the complaint and in the proof was damage exempted by the terms of the contract, for which the steamship was not to be liable.   This was denied, and the defendant excepted.   The court thereupon submitted to the jury the question whether the damage had been occasioned by the improper stowage of the oil, which submission was excepted to by the defendant.   The defendant also asked the court to instruct the jury that there was no evidence of improper stowage of oil.   This request also was declined, and the defendant excepted.

In respect to the question as to whether the damage had been occasioned by the improper stowage of the oil, though the plaintiffs, prior to the court having announced the question which it intended to submit, claimed the right to go to the jury upon several other questions, they took no exception to the question as finally submitted by the court.   As to this question of fact, the manner of stowage of the oil was described by the witnesses for the defendant, and their evidence tended to show that it was stowed in the usual way, in a proper manner, and that the cause of the end dunnage falling down, and the barrels working loose in the tiers, resulting in a leak, was the rough and high sea experienced upon the voyage.   On the part of the plaintiffs, a witness was produced who, after showing that he was qualified from his experience to express an opinion as to the proper manner of stowing merchandise upon vessels crossing the ocean, pointed out what he regarded as the faulty

manner in which the goods here in question were stowed, and stated that, in his opinion, from the fact of the barrels having worked loose, the stowage was improper. Although there were more witnesses upon this question who testified in defendant's favor, and though in one respect, due to the fact that they had personally observed the manner in which the plaintiffs' goods were stowed, their testimony was entitled to greater weight, this was to an extent counterbalanced by the evident interest which they necessarily must have had in meeting the charge that their own manner of stowing the goods was negligent. Under these circumstances, the jury having found in favor of the plaintiffs upon conflicting evidence, we would not be disposed to disturb the verdict, if the question was properly submitted, or if, under the terms of the bills of lading, there was upon the evidence any question to be submitted to the jury.

This brings us to the crucial question arising upon this appeal, which is presented by the motion to dismiss the complaint or direct a verdict for the defendant at the close of all the evidence. Defendant's contention is that by the terms of the bills of lading it is exempt from liability, and that, this fact having been made to appear to the court, it should either have dismissed the complaint or directed a verdict for the defendant, and that the exception to such refusal entitles the defendant thereon to a judgment in its favor. The plaintiffs, on the other hand, to meet the force of this claim, assert that there is absolutely no evidence disclosed by the record which shows that the terms of this alleged bill of lading, under which the defendant claims a technical exemption, were ever brought home to the plaintiffs, or any one representing them, either directly or by implication of law; and, *secondly,* that, though evidence was present to show that the bills of lading were binding upon the plaintiffs, under a strict construction to be given to the terms thereof, the defendant is not exempted from liability for the particular negligence in question by plain and unequivocal language, which could not be misunderstood by the shipper. If plaintiffs' contention were supported, that there is no evidence in the record showing that the bills of lading were binding upon them, we should have little difficulty in reaching a conclusion in their favor upon the other questions presented; because, as stated in *Park* v. *Preston,* 108 N. Y. 434, 15 N. E. Rep. 705, headnote: "In the absence of evidence to the contrary, it is to be assumed that goods accepted by a carrier for transportation are taken under the responsibility cast upon the carrier by the common law, save as modified by the statute. If the goods are lost (or damaged) under circumstances which render the carrier liable by the general rule of law, he must respond, unless he can show that there was a special acceptance, equivalent to a contract, which exempts him from the ordinary liability of common carriers in the particular case."

So much reliance is placed by the plaintiffs upon this case (*Park* v. *Preston*) as an authority in their favor that a brief statement of the facts is necessary in order to show the distinguishing features between it and the present one. There the plaintiff, having been advised by the carriers that they would transport a quantity of iron at a price agreed upon, inclosed to them a delivery order for the iron, with directions as to shipment. The carriers, by means of the delivery order, procured the iron, and shipped it upon a canal boat, and, on completion of the shipment, signed a bill of lading, which was mailed to plaintiff; but before it reached them, and on the same day the bill of lading was signed, the canal boat, with the iron on board, had sunk in the Hudson river. The bill of lading contained a provision exempting the carrier from liability for loss occasioned by dangers or accidents of navigation while on lakes, rivers, or canals. In an action to recover damages for the loss, there was no evidence that the parties agreed before the bill of lading was signed that the goods were to be carried under a restricted liability, or that the compensation was regulated on that assumption, or that there was

any usage or custom that bills of lading on shipments of this character should contain such exemptions. It was further held that, the carriers having acted upon the letter and acquired possession of the goods by means of the delivery order, there was apparently a complete contract; and while it might be assumed that, in accordance with the usual course of business, a bill of lading would be signed when the iron was shipped, this did not justify an inference that it was open to the defendants to insert therein clauses restrictive of the usual liabilities of carriers. From these facts, and from the decision, it was clear that the signing and sending of the bill of lading, after another complete contract with respect to the goods had been made, were not binding on the shippers, because there was no evidence that it had been agreed or assented to. A carrier so receiving goods is held to his common-law obligation to deliver them safely. As stated by EARL, J., in *Cragin* v. *Railroad Co.*, 51 N. Y. 63: "The rule of the common law makes a common carrier responsible for the safe carriage and delivery of property intrusted to his care, unless he be prevented by the act of God or of the public enemy." Here the plaintiffs seek to hold defendant to its common-law liability, and upon this theory it was not necessary, in the first instance, to prove that they shipped the goods under a written contract. In the absence of the latter, the law implies an obligation on the part of the carrier to deliver the merchandise in good order to the person from whom he accepts freight. The motion to dismiss at the close of plaintiffs' case was therefore properly denied. And, for the purpose of relieving itself from the obligation thus incurred at common law, the burden was placed upon the defendant of showing an exemption under a special contract. As already said, the plaintiffs insist that no evidence to support the burden thus cast upon the defendant appears in the record. We cannot, however, agree with this statement, because we think it has been clearly established in this case that the bills of lading constituted the agreement between the parties. We concur with plaintiff in the proposition that a bill of lading which has never been assented to in fact or in law by the shipper or owner is not binding. But the converse of this proposition is equally true, that a bill of lading which has been assented to in fact or in law by the shipper or owner is binding.

The record discloses, in regard to these bills of lading, the following: One of the plaintiffs, upon cross-examination, testified that "these goods were carried on a bill of lading. They were shipped at Antwerp, and brought over by the Ludgate Hill, on the bill of lading which was issued in Antwerp. *Question.* (Showing papers marked for identification defendant's Exhibits 1 and 2.) Are these the bills of lading? *Answer.* Yes." From the bills of lading themselves, it would appear that one Richard Berns acted as the agent for both the shipper and the steamship company, and it was therein provided that the goods should be delivered in New York to the order of Seligman & Co., who it was testified were bankers, and of whom one of the plaintiffs testified he received the bills of lading. The bankers indorsed the bills of lading to plaintiffs, who thereupon took duplicates of them to the customhouse, and entered the goods thereon. The record also shows that, during a discussion between the court and counsel respecting one of the papers used upon the trial, the defendant's counsel, in answer to a question by the court, stated: "They were brought here on this ship under this bill of lading;" to which plaintiffs' counsel said: "There is no doubt about that." In the face of such testimony, and what was made to appear upon the trial, we are unable to agree with the counsel for plaintiffs that absolutely no evidence is disclosed by the record made up by the defendant in this case which shows that the terms of this alleged bill of lading under which the defendant claims a technical exemption were ever brought home to the plaintiffs, or any one representing them, either directly or by implication of law. It is clear upon the authorities that, in order to make a bill of lading binding upon the shipper,

it is not essential to show that he signed the same, though it is necessary, if its terms restrict the carriers' common-law liability, that his assent thereto be shown. Such assent, however, need not be express; it is sufficiently indicated by an acceptance of the bill of lading containing the restrictions. As said in *Kirkland* v. *Dinsmore*, 62 N. Y. 176: "It has been repeatedly adjudged in this state that the acceptance by the shipper on the delivery of goods for transportation to a carrier of a receipt or bill of lading signed by the carrier, expressing the terms and conditions upon which they are received and are to be carried, constitutes, in the absence of fraud or imposition, a contract controlling the rights of the parties." We think it equally well established that, though in this case there was no evidence that the bill of lading was delivered to plaintiffs or to their duly-constituted agent at the time of the shipment of the goods at Antwerp, still the forwarding of the bills of lading to the bankers, the indorsement thereof over to plaintiffs, and their entry thereon of the goods at the customhouse, were an unequivocal ratification of the terms and conditions of a contract entered into on their behalf, the terms of which, in the absence of any evidence to show that they dissented or demurred thereto, they must be held to have assented to and accepted.

This leaves still to be disposed of the plaintiffs' contention, that by the terms of the bills of lading the defendant is not exempted from liability for the particular negligence in question by plain and unequivocal language which could not be misunderstood by the shipper. The rule to be applied in construing agreements limiting the common-law liability of carriers is well summarized in *Kenney* v. *Railroad Co.*, 125 N. Y. 425, 26 N. E. Rep. 626, as follows: "The rule is firmly established in this state that a common carrier may contract for immunity from its negligence or that of its agents, but that to accomplish that object the contract must be so expressed, and it must not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule, and forbid its operation, except where the carrier's immunity from the consequence of negligence is read in the agreement *ipsissimis verbis*. The doctrine of such contracts was stated by this court in the case of *Perkins* v. *Railroad*, 24 N. Y. 196, 208. It was reiterated in the opinion of Judge ALLEN in *Blair* v. *Railroad Co.*, 66 N. Y. 313; and in *Mynard* v. *Railroad Co.*, 71 N. Y. 180, CHURCH, C. J., reviewing the question at some length, considered the prior decisions of this court, and referred to certain decisions in the United States supreme court which hold a different doctrine as to such agreements. In recognizing the right of the carrier to contract for its immunity from the results of negligence, he stated the general rule to be that such contracts must be expressed in unequivocal terms."

It remains to apply the rule thus established to the facts here appearing, and in thus applying it we must bear in mind what caused the injury to plaintiffs' goods as determined by the evidence and by the submission to the jury. The plaintiffs did not object or except, and must therefore be held to have assented, to the correctness of the view of the trial judge as to the proper question to be submitted to the jury. The defendant excepted to the submission of this question, and insisted that the shipowner was only responsible to the plaintiffs, if at all, for the improper stowage of the furs, and not for improper stowage of the oil, and that the improper stowage of the oil would come within that clause which says it shall not be liable for stowage of the oil with furs. This requires that we should refer to so much of the bills of lading as presents the question, which is to be found incorporated in the defendant's second defense set forth in the answer, as follows: That the said merchandise was shipped to be delivered subject to the following express exceptions and conditions, among others, which were embodied in the bills of lading delivered to the plaintiffs, and which were expressly agreed to by them, viz.: "Injury from corruption, frost, decay, stowage, or contact

with, or smell or evaporation from, other goods, however these or any of them may be brought about; whether any of the perils, causes, or things above mentioned, or the loss or injury arising therefrom, or from any other specified cause, be occasioned by or from any act or omission, negligence, default, or error in judgment of the pilot, master, mariners, engineers, stevedores, or other persons in the service of the ship's owners, whether on board the said ship or any other ship belonging to or chartered by them, or otherwise howsoever, for whose acts they would otherwise be liable."

The question submitted to the jury having restricted the causes producing the injury to improper stowage of oil in the same compartment with the furs, the defendant relies for immunity upon two express exemptions above quoted from the bill of lading. The *first*, that the defendant should not be liable for "injury from stowage;" *secondly*, "or from any other specified cause, occasioned by or from any act or omission, negligence," etc., of persons in the service of the defendant. There is much force in plaintiffs' contention that a strict construction of the language of the bill of lading against the defendant might lead to the conclusion that it refers to the injury, wasting, leakage, breakage, or stowage of the merchandise shipped and included in the bill of lading, and does not refer to the leakage, breakage, or stowage of other goods than those shipped, and that it cannot, therefore, be said to be perfectly plain and beyond question, within the decisions, that the use of this word "stowage," examined with reference to the other language used in connection therewith, would inevitably convey to the shipper that the defendant intended to exempt itself from liability for improper or negligent stowage of other goods. Though we should resolve this in plaintiffs' favor, there is the other clause relating to an exemption from the negligent acts of the defendant's employes which is fatal to plaintiffs' right to recover.

We are referred to many authorities, one of the leading ones being that of *Nicholas* v. *Railroad Co.*, 89 N. Y. 370, which supports the proposition that a shipping contract will not be construed as exempting the carrier from liability for his own negligence, unless the intent is so plainly and distinctly expressed that it cannot be misunderstood by the shipper; it cannot be inferred from general words in the contract. That was a case of a quantity of trees shipped on defendant's road, the shipping contract containing an exemption "for damage occasioned by delays from any cause, or from change of weather." The trees were lost by the negligent delay of defendant in transportation. In an action to recover damages, it was held that such a loss was not covered by the exemption, and that defendant was liable. The ground upon which this decision was based is thus stated in the course of the opinion: "There is an almost unbroken line of judicial expression to the effect that general words will not operate to exempt a carrier from liability for his own negligence." In another part of the opinion the learned judge says: "The practice of common carriers making special exceptances exempting them from their ordinary responsibility, though contrary to the policy of the common law, liable to abuse, and productive of inconvenience, has obtained too long to be now questioned. In this state it has been extended so as to authorize a special exceptance exempting them from liability from their own negligence. But a contract exempting a bailee for hire from the obligation of care on his part in respect to the goods in his custody is, to say the least, unreasonable; and, while the law does not go to the extent of making it void on that ground, yet the qualification that to have that effect it must be plainly and distinctly expressed, so that it cannot be misunderstood by the shipper, is * * * obviously just," etc.

Construing the contract here so as to give no effect or meaning to general words, resolving all doubtful ones most favorably to the shipper, and having in mind the rule that the exemptive clause must be expressed so as to cover the precise exemption claimed, and in language so plain as not to be open to

the view that it was liable to be misunderstood by the shipper, we still think that it would be doing violence to language not to hold that, by the terms of this contract, the language clearly expressed that the shipowner was not to be responsible for injuries arising from the negligence of its employes, and that the improper stowage, which was ascribed as the cause of the injury, was submitted to the jury upon the theory that the evidence presented a question as to whether or not the improper stowage of the oil by the servants of the defendant was the proximate cause; and, as we have said, such negligence seems to have been expressly exempted by the terms and the very language used in the bill of lading. In our view, therefore, the motion made by the defendant at the end of the case, for a direction in its favor, was proper, and should have been granted, and the exception taken thereto is good.

There still remains a subsidiary question as to the effect of the failure to prove the allegation of the answer, that the consideration for these exemptions and exceptions accorded to the defendant was the low rate of freight the defendant agreed to accept as a condition to its release from any liability for loss resulting from causes exempted. We do not think that such failure on defendant's part was material to the disposition of the case, for the reason that it is entirely competent for the parties to enter into a contract; and where it appears that, in consideration of a stipulated sum, the carrier agrees to perform certain services upon condition of certain exemptions, sufficient consideration is to be found in the carrier's obligation thus assumed to support the exemptions provided for in the contract. Were there a statute requiring a carrier to transport goods at certain specified rates, another question might be presented; but, in the absence of any such statute or law binding upon the carrier to transport at certain fixed rates, we can see no good reason why the shipper and carrier may not enter into a contract upon such terms and conditions as may be agreed upon between them. Upon the exceptions we are of opinion, therefore, that the motion to set aside the verdict and grant a new trial, made by the defendant, should be granted, with costs to abide the event.

VAN BRUNT, P. J., concurs in result. PATTERSON, J., dissents.