expressed by the language used in the instrument, and therefore the plaintiff ceased to have any right, title, or interest in or to the logs or timber in question after said date.

A contract very similar to the one under consideration was construed in the case of Boisaubin v. Reed, *41 N. Y. 323; and it was held, in substance, that, the parties by contract having fixed the time within which the vendee might enter the land and carry away the timber, after the expiration of such term the vendee had no right to enter the vendor's premises for the purpose of removing the same; and in that case the court said, "The vendee has no title to the timber by cutting logs and leaving them upon the land, but, to complete his title, he must also remove the logs within the time." To the same effect is Kellam v. McKinstry, 69 N. Y. 264, in which, in a very exhaustive opinion written by Judge Miller, the case of Boisaubin v. Reed, supra, is cited with approval. See, also, Inderlied v. Whaley, 65 Hun, 407, 20 N. Y. Supp. 183; Grange v. Palmer, 56 Hun, 481, 10 N. Y. Supp. 201. In that case, also, the case of Boisaubin v. Reed is referred to with approval, and it is said that the soundness of the proposition as stated by the court in that case cannot be questioned.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.

---

OLDS et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1905.)

1. CARRIERS—LIMITATION OF LIABILITY—LIVE STOCK CONTRACT—VALIDITY.

A so-called "live stock contract," by its terms relieving a railroad of its common-law liability in important particulars and from liability on account of neglect of its duty in the transportation of horses, signed by the shipper, who did not know the contents or purport thereof, after the horses were loaded on one of defendant's cars, and had left the shipping point, was not binding.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 933–949.]

2. SAME—QUESTIONS FOR JURY.

Whether a contract limiting a carrier's liability for negligence in the transportation of live stock was executed by plaintiffs in ignorance of its contents and after shipment *held* a question for the jury.

3. SAME.

Whether a carrier's conduct in the transportation of and caring for horses shipped was such as to absolve it from liability under the common-law rule *held* a question for the jury.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 962.]

4. SAME—CAUSE OF ACTION—TORT OR CONVERSION.

Evidence that defendant railroad failed to discharge its common-law duty as a common carrier respecting the transportation of plaintiffs' horses, injured by defendant's inattention and negligence, did not establish a cause of action against defendant in tort or for conversion.

5. SAME—DELIVERY OF PROPERTY IN TRANSITU—DUTY OF CARRIER—AMEND-
MENT TO COMPLAINT—REVERSIBLE ERROR.

In an action against a carrier for injuries to plaintiffs' horses, resulting
from defendant's alleged negligence and inattention in transporting them,
where the court ruled that by reason of the shipping contract defendant
was relieved of its common-law liability, a ruling permitting the complaint
to be amended so as to allege a cause of action in tort for conversion, on
the theory that plaintiffs had a right to demand the horses while in
transitu, and that, there being evidence tending to show such demand for
the purpose of feeding and caring for the horses, defendant was liable for
injuries to the horses resulting from its inattention and neglect after re-
fusal to deliver them, was reversible error, as a railroad is not bound to
deliver to a shipper, while in transitu, goods or live stock consigned to
himself; certainly not unless the freight is paid.

6. SAME—DUTY TO CARE FOR STOCK.

A carrier receiving live stock for shipment is bound to properly care for
the same, or afford the shipper reasonable opportunity to do so.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 923,
926–928.]

Appeal from Trial Term, Jefferson County.

Action by Thaddeus Olds and another against the New York
Central & Hudson River Railroad Company. From a judgment
for plaintiffs and from an order denying its motion for a new trial,
defendant appeals. Reversed.

The action was commenced on the 28th day of May, 1904, to re-
cover damages sustained by the plaintiffs, alleged to have been
caused on account of the failure of the defendant to properly dis-
charge its duty as a common carrier in the transportation of a car
load of horses from the city of Buffalo to Adams, N. Y.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Henry Purcell, for appellant.
V. K. Kellogg, for respondents.

McLENNAN, P. J.   In the complaint it was alleged, in sub-
stance, that the defendant undertook to carry over its railroad from
the city of Buffalo to Adams, N. Y., a car load of horses for the
plaintiffs; that it failed to discharge its duty as common carrier in
that regard; and that in consequence the horses were injured, and
the plaintiffs sustained damage. The defendant alleged, and it is
not disputed, that the plaintiffs signed a "live stock contract," so
called, which by its terms relieved the defendant of its common-law
liability in many important particulars, and relieved it from liabil-
ity on account of any of the alleged wrongful acts or omissions
which the evidence tends to establish in respect to the shipment of
the horses in question. It appears, however, that such contract
was signed by the plaintiffs after the horses had been loaded in one
of defendant's cars and had left the city of Buffalo for their destina-
tion. And there is also evidence tending to show that the plaintiffs
did not know the contents or purport of such agreement. If such
was the fact—and the jury would have been justified in so finding—
then the contract had no binding force or effect, and the responsi-
bility imposed upon a common carrier by the common law was cast

upon the defendant. Park v. Preston, 108 N. Y. 434, 15 N. E. 705. Where the goods or property have been shipped and are beyond recall before the bill of lading or agreement limiting the carrier's liability is executed, it does not affect the rights of the parties. Guillaume v. Central Transportation Company, 100 N. Y. 491, 3 N. E. 489; Germania Fire Insurance Company v. Memphis & Charleston Railroad Company, 72 N. Y. 90, 28 Am. Rep. 113; Waldron v. Fargo, 170 N. Y. 130–137, 62 N. E. 1077, and cases cited.

In the case at bar the learned trial court held as matter of law that the live stock contract was valid and binding, and fixed the contractual relations between the parties. Clearly, under the authorities cited, such holding was erroneous. It is urged, however, that the appellant ought not to be heard to complain, because such ruling was favorable to it. Clearly, that would be so if the learned trial court had stopped there; but instead, at the close of plaintiffs' evidence, after having ruled that no liability had been established as for a violation of the contract, and that the defendant was relieved of its common-law liability because of such contract, it was suggested by the court that the complaint might be regarded as amended so as to allege a cause of action in tort, in effect a cause of action in conversion, upon the theory, as stated by the learned trial court, that the plaintiffs had a right to demand their property while in transitu, and that, as there was evidence tending to show that they did demand the horses from the defendant while the car was in Syracuse, for the purpose of feeding and caring for the same, and that the defendant refused to deliver them, the jury, if they believed that evidence, might find that the defendant was guilty of a tort; and, if they found as a result that the horses were injured by the inattention and negligence of the defendant after such demand and refusal, the plaintiffs would be entitled to recover. The case was submitted to the jury, if we properly interpret the meaning of the proceedings, upon that theory. To the ruling permitting the complaint to be so amended defendant's counsel duly excepted.

Considering all the circumstances, we think such ruling constituted reversible error. But, independent of that question, the evidence did not establish a cause of action against the defendant in tort or for conversion. It simply, if true, tended to prove that the defendant failed to discharge the duty imposed upon it by the common law as a common carrier. The jury, however, were instructed that they could not find the defendant liable because of its failing to perform such duty, but only if they found that it wrongfully failed to deliver possession of the horses to the plaintiffs after demand duly made. We know of no rule which makes it incumbent upon a railroad company to deliver goods or live stock while in transitu, to a shipper, consigned to himself; certainly not unless the freight is paid. If, however, a railroad company receives live stock for shipment, it is bound to properly care for the same itself, or afford reasonable opportunity to the shipper to do so. If the evidence on the part of the plaintiffs is to be believed, they sustained damages because the defendant failed to transport their horses from Buffalo to Adams, and care for them in a reasonably proper manner. That

was the theory of the plaintiffs' complaint; that was the theory upon which all the proof on behalf of the plaintiffs was introduced; but no such question was submitted to or passed upon by the jury.

Many other exceptions have been called to our attention, but, as a new trial must be had, it would seem to be unnecessary to call particular attention to any of them. In short, we think the case was submitted to the jury upon an erroneous theory. They should have been permitted to say whether the "live stock contract" so called, was executed after the horses had been shipped and under the circumstances claimed by the plaintiffs, and, if so, then instructed that it did not change or affect the common-law liability of the defendant. The jury should then have been permitted to say upon the whole evidence whether or not the conduct of the defendant in the transportation of and caring for the horses was such as to absolve it from liability under the common-law rule, and, if not, then such damages should be awarded to the plaintiffs as would compensate them for the actual damages sustained. It follows that the judgment and order appealed from should be reversed upon questions of law only, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined, and no error found therein. All concur.