OTTILLIE HEUMAN, Respondent, v. M. H. POWERS COMPANY, Appellant.

First Department, December 29, 1916.

Carriers — general truckman a common carrier — liability of common carrier for value of stolen articles, under contract limiting its liability.

A general truckman transporting goods for hire under special contracts is a common carrier.

A clause in plain letters in the contract of a general truckman, limiting its responsibility to fifty dollars for any article together with the contents thereof, relieves it from liability in excess of said amount for the value of goods stolen by its employees while in its possession.

A clause in a receipt or shipping contract indicating that the consideration for the valuation at a fixed sum was that a lower rate of freight was thereby secured than would have been charged if the true value of the goods had been stated, does not affect the validity of the contract as to the question of the carrier's liability.

SMITH and MCLAUGHLIN, JJ., dissented, with opinion.

APPEAL by the defendant, M. H. Powers Company, from an order and determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 22d day of May, 1916, affirming a judgment of the City Court of the City of New York in favor of the plaintiff. An appeal is also taken as stated in the notice of appeal from the order of the Appellate Term denying defendant's motion for a reargument.

*Powers & Kaplan*, for the appellant.

*Bertram L. Kraus*, for the respondent.

SCOTT, J.:

The defendant is a general truckman transporting goods for hire under special contracts. He was, therefore, a common carrier. (*Jackson Architectural Iron Works* v. *Hurlbut*, 158 N. Y. 38.) He was employed by plaintiff to move her household effects from 435 Convent avenue in the city of New York, borough of Manhattan, to No. 2478 Second avenue, in the same city and borough. Plaintiff's husband, who concededly acted as her agent in the matter, signed a paper partly printed and

partly written containing shipping directions and the stipulated hire. This paper also contained in perfectly plain letters the following statement: "The responsibility of the Company is limited to Fifty dollars for any article together with the contents thereof."

Among the articles intrusted to the defendant was a safe, within which was a box containing jewelry belonging to plaintiff and her husband, and valued by them at upwards of $1,000. The goods were delivered to defendant late in the afternoon of Saturday, May 24, 1913. There was some conversation between plaintiff's husband and agent, and a representative of defendant as to whether or not it would be too late to deliver the goods on that evening, and it was agreed that if necessary the van might be placed in defendant's storehouse until Monday. This was done and on Monday, May twenty-sixth, the goods were delivered. In the meantime, however, and while the van was in defendant's possession the safe was broken open by some of its employees and the jewelry stolen. This action is to recover the value of the stolen articles. Plaintiff had a verdict for $1,000, upon which judgment was entered, and affirmed by the Appellate Term.

The sole question in the case is as to the efficacy of the clause above quoted limiting defendant's liability.

It is now well settled in this State that it is competent and valid for a common carrier to limit his liability by agreeing with the shipper upon a maximum valuation of the articles to be carried (*Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389; *Tewes* v. *North German Lloyd S. S. Co.*, 186 id. 151; *Gardiner* v. *N. Y. C. & H. R. R. R. Co.*, 201 id. 387), and a clause in a contract of carriage limiting the liability of a carrier to a given sum is held to be equivalent to a valuation of the goods. (*Magnin* v. *Dinsmore*, 62 N. Y. 35; 70 id. 410.)

It is true that in order to exempt the carrier from liability for negligence the provision making such exemption must be clearly and expressly stated. (*Magnin* v. *Dinsmore*, 56 N. Y. 168; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 id. 180.)

In the present case the action is not based on defendant's negligence, but upon its general common-law liability as a common carrier for loss or damage of goods. The only allega-

tion of negligence contained in the complaint reads as follows: " *Seventh.* Upon information and belief that the men employed by the said defendant, or some of them, to pack and move the property, furniture and effects of this plaintiff were dishonest and were not selected by the defendant as employees with a proper regard and care as to their honesty, but were carelessly and casually selected and employed by the defendant without regard to their previous character and reputation, which could have been ascertained upon propèr inquiry made by the defendant, which wholly failed to make such inquiry, and that the said employees, or some of them, were men of loose character and dishonest and not proper men to be trusted with the labors that the defendant entrusted the same with." No attempt was made to establish this allegation by proof.

The case on the facts closely resembles *D'Utassy* v. *Barrett* (171 App. Div. 772; affd., 219 N. Y. 420), recently decided by this court wherein there was a similar limitation of the carrier's liability, and the loss occurred through a theft on the part of the carrier's employees. The opinion of the court by Mr. Justice SMITH quite clearly and very correctly states the reasons why the shipper in such a case may not recover more than the stipulated value of the stolen goods.

It is true that in the *D'Utassy* case and in a number of others the receipt or shipping contract contained words indicating that the consideration for the valuation at a fixed sum was that a lower rate of freight was thereby secured than would have been charged if the true value of the goods had been stated. But that circumstance does not, in my opinion, affect the question of the validity of a written, deliberate agreement as to the extent of the carrier's liability, and so far as I am aware no case has ever held that circumstance to be controlling. On the contrary, it was held to be irrelevant in *Rubens* v. *Ludgate Hill Steamship Co.* (20 N. Y. Supp. 481, 487; affd., 143 N. Y. 629), decided by the General Term in this department. In that case the court said: " There still remains a subsidiary question as to the effect of the failure to prove the allegation of the answer, that the consideration for these exemptions and exceptions accorded to the defendant was the low rate of freight the defendant agreed to accept as a condition to its release from

any liability for loss resulting from causes exempted. We do not think that such failure on defendant's part was material to the disposition of the case for the reason that it is entirely competent for the parties to enter into a contract; and where it appears that, in consideration of a stipulated sum, the carrier agrees to perform certain services upon condition of certain exemptions, sufficient consideration is to be found in the carrier's obligation thus assumed to support the exemptions provided for in the contract."

Indeed there is high authority for saying that even if the contract of carriage had contained no specific limitation of defendant's liability still the plaintiff might be refused relief because of her act in misleading defendant as to the extent of responsibility it assumed by concealing the fact that the safe contained jewelry of considerable value. (*Nathan* v. *Woolverton,* 149 App. Div. 791.) It is not necessary to go so far as that in the present case, nor are we to be understood as placing our decision upon that ground. It is cited merely to illustrate the point that it is not the rate of freight alone, but also the degree of care necessary to be given to the goods intrusted to the carrier that is taken into consideration in fixing a valuation upon the goods. It is quite probable for instance in the case at bar, that if the carrier had been advised that the safe contained valuable and easily portable jewelry, he would have taken some extraordinary means to guard against its loss.

Our conclusion is that the determination of the Appellate Term and the judgment of the City Court must be reversed and a new trial granted, with costs to appellant in all courts to abide the event, unless the plaintiff shall stipulate to reduce the recovery to fifty dollars, with interest and costs in the City Court, in which event the judgment as so modified will be affirmed, without costs to either party in this court or the Appellate Term.

CLARKE, P. J., and PAGE, J., concurred; SMITH and McLAUGHLIN, JJ., dissented.

SMITH, J. (dissenting):

Plaintiff in this case sued to recover from the defendant the sum of $1,115, the value of certain jewelry stolen from a safe

owned by the plaintiff, which safe was delivered to the defendant for cartage and subsequently rifled by the defendant's employees. It appears that the plaintiff was about to remove her household goods to a new residence, and employed the defendant company to transport these goods to the new place of residence for the lump sum of $49. The defendant is engaged in the moving and storage business, and at the time the contract was made secured the signature of the plaintiff's husband, who was admittedly authorized to act for her in this respect, to a memorandum contract, which stated: "Price per contract $35, cartage on piano $14 * * * —$49." This contract, or order for the work to be done, also contained immediately above the signature mentioned the following provisions: "All fragile articles, unless packed and unpacked by this company, are at owner's risk, and no employee has authority to waive this condition. The responsibility of the Company is limited to Fifty dollars for any article, together with the contents thereof." One of the articles to be moved, and which was apparently in full view of the defendant's representative at the time the contract was made or the order given, was a small safe. In this safe plaintiff kept jewelry, and her claim in this action is based upon the conceded fact that the safe was broken open and the contents stolen by defendant's employees while the safe was in defendant's warehouse, where it was kept in the van over Sunday by plaintiff's consent, having been received too late on Saturday night for delivery that night. At the close of plaintiff's case the defendant also rested, and asked that a verdict be directed for the plaintiff in the sum of $50 on the ground that under the contract mentioned the defendant's liability was limited to the sum of $50, and that there was no evidence that the goods lost were lost by reason of gross negligence or any negligence on the part of the defendant. This motion was denied, and the trial judge left to the jury simply the question of the amount of the plaintiff's recovery, and they returned a verdict for the sum of $1,000.

It is first contended, that there is no proof here that these goods were lost by the negligence of the defendant. The admission is that while in the defendant's warehouse where the van was stored the safe was rifled and the goods were stolen by the

defendant's employees.    In the *D'Utassy Case* (171 App. Div. 775), which was under an express company contract, which will hereafter be referred to, the opinion says: "But the instant case presents a totally different question, since the conversion of the goods was by an employee for his own benefit.   His acts in furtherance of this purpose were not company acts, but the acts of a stranger.   But for not preventing the theft the company through its agents, including the thief, was negligent. It was a part of the contract of carriage to prevent thefts by any one, including their own employees."

But the same rule of reason and public policy which would require a company stipulating for its own exemption of limitation of liability for negligence to specifically so state would apply with still more force to a company stipulating against its liability for its own wrong or the conversion of its servants. ·And under the rule laid down in the *D'Utassy Case* (*supra*) this case may, therefore, be considered as though the limitation of liability here were a limitation from liability for the negligence of the carrier.   That defendant is a common carrier of goods is not questioned.

The legal question presented by this appeal is sharply outlined in the dissenting opinions in this court and in the Court of Appeals in the case of *Gardiner* v. *N. Y. C. & H. R. R. R. Co.* (reported in this court in 139 App. Div. 17, 24, and in the Court of Appeals in 201 N. Y. 387, 396).   In that case the plaintiff had purchased a commuter's fifty-trip ticket, nontransferable, at a greatly reduced rate according to a tariff filed with the Public Service Commission.   Upon the ticket was printed a provision limiting the railroad's liability for baggage to fifty dollars.   It was held that the passenger could not recover in excess of that sum.   Mr. Justice LAUGHLIN, in his dissenting opinion in this court, says: "It is well settled that a shipper or passenger and a common carrier may make a binding contract with respect to the value of the property, whether shipped as freight or baggage, which will limit the amount of the recovery, and this may be done either by an express provision fixing the actual value, or by a valuation specified by the carrier in the bill of lading or ticket, as the valuation agreed upon in the event that a higher valuation

is not declared and a higher rate paid [citing authorities]. In the case at bar, however, the agreement printed by the carrier on the ticket is not a *valuation* agreement, but is a clear attempt on its part to limit its liability, and in such case the rule is that, although the condition be binding upon the shipper or passenger, it will be construed as a limitation on the carrier's liability as insurer and not upon its liability as a bailee for hire and, therefore, will not be construed as relieving the carrier from liability for its own negligence, which is alleged here and admitted, unless it is *expressly* so provided or such intention is so clearly expressed that it cannot be misunderstood by a shipper or passenger of ordinary intelligence." In the Court of Appeals, Judge VANN in his dissenting opinion, in which two other judges agree, says: " In *Wheeler* v. *Oceanic Steam Navigation Co.* (125 N. Y. 155, 161), Judge FINCH, after reviewing certain cases, wrote for all the judges as follows: ' These cases show that the liability for negligence as bailee survives even when by special contract the carrier has thrown off his liability as such; and the courts of this state have exhibited a very decided purpose to retain and enforce that liability wherever it is possible. Even that may be thrown off by force of a special agreement, but we have refused to permit any general words to accomplish such result, and have insisted that where the carrier seeks to contract against the consequences of his own negligence, he must say so openly and plainly so as not to be in the slightest degree misunderstood. * * * (*Nicholas* v. *N. Y. C. & H. R. R. R. Co.*, 89 N. Y. 372.) ' The defendant claims to have thrown off its liability as bailee by virtue of the ' condition ' above quoted, which it regards as a special agreement of valuation. I cannot assent to this position under the rule of strict construction against the carrier, which, unless many precedents are to be disregarded, must be applied in this case. There is nothing in the stipulation that suggests valuation to my mind. Neither the word ' value ' nor ' valuation,' nor any equivalent word or expression, appears in the ' condition,' which is simply an arbitrary and flat limitation of liability to the sum of fifty dollars, not as a valuation but as a limitation, pure and simple. *The opportunity, afforded in many of the reported cases, to*

*declare a higher value and pay at a higher rate was not given to the plaintiff.* Such a provision shows an intention to value at the sum named, by offering as an alternative the chance to value at a. higher rate, if the shipper so elects. There was no express valuation, and a valuation by implication is not stated 'in unequivocal terms' or 'so that it cannot be misunderstood' as the cases require. [Citing cases.]"

The facts in that case, however, are materially different from the facts in this case and present a clear distinction. Mr. Justice CLARKE, in writing the prevailing opinion for this court, says: "The tickets here under consideration are as special and as different from ordinary railroad tickets as the steamship tickets alluded to. * * * They are intended for commuters coming in and out from suburban places, and for such travelers the limitation upon the personal baggage to be carried and the value thereof is reasonable. Whether so or not is not to be determined by this court in the first instance. The rates have been filed with the Public Service Commission as required by law. (Laws of 1907, chap. 429.) Section 28 thereof requires the filing of schedules showing the rates, fares and charges for transportation of passengers and property within the State between each point upon its route and all other points thereon. 'The schedules printed as aforesaid shall plainly state the places between which property and passengers will be carried, and shall also contain the classification of passengers, freight or property in force, * * * all privileges or facilities granted or allowed, and any rules or regulations which may in any wise change, affect or determine any part, or the aggregate of, such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee.' And section 33 provides that 'Nothing in this act shall prevent the issuance of mileage, excursion, or commutation passenger tickets, or joint interchangeable mileage tickets, with special privileges as to the amount of free baggage that may be carried under mileage tickets of one thousand miles or more. But before any common carrier, subject to the provision of this act, shall issue any such mileage, excursion, commutation passenger ticket or joint interchangeable mileage ticket, with special privileges as afore-

said, it shall file with the commission copies of the tariffs of rates, fares or charges on which such tickets are to be based.' I think the case at bar comes directly within the *Tewes Case* (186 N. Y. 151), that the limitation of liability was clearly expressed in the special contract of transportation accepted by the plaintiff, who must be deemed to have assented thereto." In the *Tewes* case the stipulation provided for a limitation of the amount for which the carrier should be liable for loss or damage " unless a declaration of value in excess of that sum is made."

In the *Gardiner* case in the Court of Appeals, Judge HISCOCK, writing the prevailing opinion, says: " Counsel for the appellant is entirely right in his claim that a clause simply releasing a carrier from liability for loss of goods will not include a case, like this, of its own negligence, unless such exemption is expressly and plainly stated. He concedes also correctly that a clause in consideration of reduced rates properly and reasonably limiting the liability of a carrier to a specified valuation of the goods received by it will include a case of a loss or damage arising from its own negligence without express mention thereof. There can be no doubt about this proposition since our recent decision in *Tewes v. North German Lloyd S. S. Company* (186 N. Y. 151). He contends that the clause here involved is not sufficient within the principle first stated because it does not expressly excuse the respondent's own negligence, and in that contention I agree with him. He then finally reaches the debatable ground of the case and insists that the provision which has been quoted is not sufficient under the principle secondly stated because it is not one of limited or fixed valuation, and, therefore, effective without express enumeration of such negligence. With this contention I do not agree, but think that the clause is to be construed as one relating to and fixing a valuation on appellant's baggage and limiting respondent's liability thereto in consideration of reduced rates. The choice is between an interpretation that this was a mere general clause releasing the carrier from liability without any reference to the character and value of the goods and one that it fixed the amount and value of free baggage which a passenger could check on this ticket and limited the carrier's liability to that amount. Of

course it was not necessary to use the specific word 'value' or 'valuation' in order to frame a clause of limited valuation and liability. If the fair meaning and purpose of the clause as understood and intended by the parties was to fix a liability based on a reduced and limited valuation of goods in consideration of reduced rates of fare, we ought to enforce this meaning and carry out this purpose if permissible. In determining what must have been the understanding of the parties concerning the meaning of the clause at the time when appellant checked her baggage under the ticket containing it, it will be well to recall some of the general statutory and other legal rules which surrounded that transaction, and with knowledge of which she must be charged." The opinion then says that the plaintiff knew that under long-established rules on a ticket at full rates she could compel the carrier to transport at its full value all of the property which she might properly check as baggage. She was held chargeable with knowledge of the statute, section 38 of the Public Service Commissions Law (Laws of 1907, chap. 429), which provided, in absence of special contract, "Every common carrier and railroad corporation shall be liable for loss, damage and injury to property carried as baggage up to the full value and regardless of the character thereof, *but the value in excess of one hundred and fifty dollars shall be stated upon delivery to the* carrier;" also chargeable with knowledge of section 33, "that nothing in this act shall prevent the issuance of mileage * * * or commutation passenger tickets, * * * with special privileges as to the amount of free baggage that may be carried under mileage tickets of one thousand miles or more," and also chargeable with knowledge of section 28, requiring every common carrier to file and give public notice of "schedules showing the rates, fares and charges for the transportation of passengers and property." It is also held that she was chargeable with knowledge of the schedule theretofore quoted filed by the carrier with the public service commission. The opinion then proceeds: "With these statutes and principles presumably in her mind, *and telling her that independent of statute she had a right under an unlimited ticket to enforce upon the respondent a liability for the full value of anything properly constituting baggage,*

*and that under the statute she had a right on proper terms to enforce upon it a liability of full valuation of anything which she might desire to have transported as baggage 'regardless of the character thereof,'* appellant preferred to secure a better rate of transportation and check her baggage under a tariff schedule and ticket which limited her as to the character of baggage and as to the amount for which liability would arise. She must necessarily have understood, as it seems to me, that although she could hold the respondent for the full value of anything she wanted to check as baggage, she was consenting to a restriction of the character and on the value of what she might check * * *. Conversely, when she attempts to establish that her lost baggage was worth more than fifty dollars, the respondent, as I think, is entitled to invoke the benefit of this clause and say, 'You shall not recover for a valuation in excess of fifty dollars because we have limited our liability to that amount of value.'" The *Tewes* case is then referred to, in which the liability was limited to fifty dollars "unless the true and just value thereof is herein stated." Judge HISCOCK further says: "The first portion of the clause is for all practical purposes identical with the one now under review. All that can be claimed to aid in making a valuation clause which does not exist in this case is the last portion of the provision that the limited liability should prevail 'unless the true and just value thereof is herein stated.' *But under the circumstances adverted to* that sentence hardly differentiates that case from this. The defendant there secured a limited liability unless, as expressly stated in the ticket itself, the shipper gave a valuation of a larger amount. The respondent here secured a limited liability unless the appellant desired an enlarged liability for the full valuation of the goods, *and which the law and respondent's tariff schedules told her how to secure* * * *. In one case the ticket itself suggested the right to fix a greater valuation. In the other the statute and rules, presumably present in the mind of the shipper, suggested and guaranteed the same right."

It will thus be seen that the limitation of liability in that case was sustained by the Court of Appeals and by this court upon the ground that by reason of the shipper's presumed knowledge

of the law and of the schedules posted with the Public Service Commission, choice was given to her to procure a greater protection upon paying a larger rate. In the United States courts it has always been held that a shipper cannot under any circumstances stipulate for exemption from liability for its own negligence. Nevertheless the United States court holds, as does our Court of Appeals, that where a choice is given to the shipper of paying a greater rate and securing larger protection, the carrier may stipulate as to the value and to the extent of its liability in case of loss. The valuation clause in these agreements is considered merely as indicating to the shipper his right to a choice; and in *Cincinnati & Texas Pacific Railway* v. *Rankin* (241 U. S. 319) the opinion reads: " The *essential choice of rates* must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability. And as no interstate rates are lawful unless duly filed with the Commission, it may become necessary for the carrier to prove its schedules in order to make out the requisite choice. But where a bill of lading, signed by both parties, recites that lawful alternate ʻrates based on specified values were offered, such recitals constitute admissions by the shipper and sufficient *prima facie* evidence of choice." In the contract in the case at bar there was a simple limitation of liability without any indication whatever to the shipper that greater protection could be procured by the payment of greater rates. There was no statute, as in the *Gardiner* case; there were no schedules filed, as in the *Gardiner* case, to give to this plaintiff such a choice. I am referred to no case, and am able to find none, either in the United States courts or in the courts of this State, which holds such a limitation of liability where there is no indication that the rates are fixed upon the value of the articles shipped to be effective to relieve the carrier from full liability for negligence unless such exemption be specifically claimed in the contract.

It follows that in the case at bar the plaintiff is entitled to recover the full value of the goods lost.

The determination and orders appealed from should be affirmed, with costs.

McLAUGHLIN, J., concurred.

Determination and judgment reversed and new trial ordered, with costs to appellant in all courts to abide event, unless plaintiff stipulates to reduce recovery to fifty dollars, with interest and costs in the City Court, in which event judgment as so modified affirmed, without costs. Order to be settled on notice.