FRANK GUILLAUME, Respondent, v. THE GENERAL TRANSPORTA-
TION COMPANY, Appellant.

In 1876 defendant was engaged as a common carrier in transporting goods
from Havre, France, to New York city. On November twenty-third of
that year one S., who resided in Gourin, France, having received, in
answer to inquiries, information by mail from defendant's agent at
Havre as to the charges and conditions of transportation, and also ad-
vices that one of defendant's steamers would sail on the twenty-fifth,
proceeded to Rennes and shipped from there, by rail, to said agent a bag
of gold having a label attached, directed to the agent at Havre, with
these words : " To forward to Mr. Frank Guillaume, 152 & 154 Bleckert
street, New York, Utica, America." The gold was received by the
agent on the twenty-fourth, and placed on board defendant's steamer,
which sailed on the twenty-eighth. On the twenty-sixth said agent
wrote to S., at Gourin, inclosing a bill of lading, which stated that the
gold was to be transported to New York and delivered "to M. Guillaume
Frank, 152 & 154 Bleckert street, New York." The bill of lading contained
a clause to the effect that the shipper or agent, by accepting the same,
submitted to its conditions. It required two days for letters to go from
Havre to Gourin.   S. sent no reply to the letter, and took no steps to ad-
vise defendant of the erroneous statement in the bill of lading.   Another
bill of lading was sent by defendant to New York, directed to "Mr. Guil-
laume Frank, 152 & 154 Bleckert St., in New York." It fell into the hands
of some person to whom, on presentation thereof, and with the represen-
tation that he was Guillaume Frank, the gold was delivered.   In an action
to recover the value of the gold because of defendant's alleged negligence,
*held*, that the bill of lading did not, under the circumstances, constitute the
contract, as the shipper, had he objected, could not have reclaimed
the property ; that the retention of the bill by him did not show an
assent to the mistake, and at most the question as to whether there was
negligence on his part in not notifying defendant's agent thereof was one
of fact ; that defendant was bound to deliver the gold to plaintiff in
accordance with the directions on the label attached, or to place it, safely
where he could obtain it ; and that whether it was negligence on defend-
ant's part in sending the bill of lading to one not entitled thereto, who
by reason thereof obtained the gold, was at least a question of fact.
Where goods have actually been shipped under an oral contract, the subse-
quent receipt of a bill of lading and neglect of the shipper to point out
errors therein does not preclude him from showing the oral contract.

(Argued October 22, 1885 ; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Supreme
Court, in the fourth judicial department, entered upon an order

made the second Tuesday of June, 1883, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover of defendant, a common carrier, running a line of steamers from Havre, France, to the city of New York, for alleged negligence resulting in the loss of a bag of gold delivered to it for transportation. The following facts appeared:

Felix Stenfort, of Gourin, in the department of Morbihan, in France, on the 15th of November, 1876, wrote to defendant's agent at Havre, known as its "Chief of Traffic," for information as to the company's terms for the transportation of a certain sum of money, etc., and was answered by a letter, dated at Havre, the 17th of November, 1876, stating the charges for the transportation, insurance, etc., and also that in case of the loss of the package the company was responsible for its value, and that there would be a departure on the twenty-fifth then current by the packet-boat France.

Gourin is over four hundred miles from Havre; there is no communication by railroad or telegraph at or in the vicinity of Gourin, and it takes a letter two days to go from one place to the other. On the 23d day of November, 1876, Stenfort, to reach one of the railroad stations having an express office connected with it, traveled from Gourin to Rennes, and deposited in the express office there 5,000 French francs in gold coins, tied up and ensealed in a linen bag, to which bag was securely tied by a double pack thread and sealed to it with sealing-wax, a tag or label containing an address and direction in the French language, the translation of which is as follows:

"Five thousand francs in gold. Value declared.
"To Mr. The' Chief of Traffic of the General Transatlantic Company, Havre.
"To forward to Mr. Frank Guillaume, 152 and 154 Bleckert "street, New York, Utica, America."

Plaintiff, who resided in Utica, N. Y., was the person for whom the gold was intended.

The bag with the gold, and the address and direction on it, was received by the defendant at Havre on the 24th day of November, 1876. It was transported to America on the company's steamer "France," which sailed on the 28th day of November, 1876. It safely arrived on the 7th day of December, 1876, was there unladen and carried to and deposited in the storehouse of the custom-house of the port of New York. The plaintiff at no time received any notice of the arrival of the gold or of the steamer. Four bills of lading, of the same tenor and date, were made out by defendant on the 24th day of November, 1876. One of these was sent on the 25th day of November, 1876, by mail, to the shipper Stenfort, who received and retained it, without notifying defendant of any error therein. The bills of lading stated that there was " shipped by Stenfort . . . a sealed bag containing 5,000 francs in coin . . . to be transported to New York and delivered there or elsewhere within the limits of the jurisdiction of the Custom House of the port of New York . . to M. Guillaume Frank, 152 and 154 Bleckert street, New York, or to his order." A copy of the manifest was published in two or three commercial papers of the city of New York. The entry in the manifest as to the gold was as follows : " H. F. — one bag specie. Stenfort. G. Frank, New York." One of the four bills of lading was sent by the defendant, addressed to "Mr. Guillaume Frank, 152 and 154 Bleckert street, in New York." It fell into the hands of some person who, provided with it, and representing himself to be Guillaume Frank, residing at 154 Bleecker street, in New York, called for, received, and carried away the gold.

*F. R. Coudert* for appellant. The bag of specie was received for transportation under a special contract, limiting the defendant's common-law liability ; and it has fully complied with that contract. (*Magnin* v. *Dinsmore*, 56 N. Y. 171 ; *Long* v. *N. Y. C. R. R. Co.*, 50 id. 77.) What constitutes a good delivery, to satisfy the exigencies of such a contract, will depend upon the known and established usages of the particular

trade and well-known usages of the port of delivery. (*Richardson* v. *Goddard*, 23 How. [U. S.] 38; *Johnson* v. *N. Y. C. R. R. Co.*, 31 Barb. 199; 3 Kent's Com. 214; *Van Santvoord* v. *St. John*, 6 Hill, 160; Chitty on Contracts, 20; *Harris* v. *Dennie*, 3 Peters, 304; *Fish* v. *Newton*, 1 Denio, 47; *Redmond* v. *Liverpool, N. Y. & P. S. Co.*, 46 N. Y. 587; *Wright* v. *Boughton*, 22 Barb. 561.) As to notice the carrier's duty is regulated by the ordinary custom of business at the port of delivery. (*Gibson* v. *Culver*, 17 Wend. 305; *Henshaw* v. *Rowland*, 54 N. Y. 242.) The plaintiff is chargeable with contributory negligence. The only reasonable conclusion from the plaintiff's case, as he has made it, is that the misdelivery by the custom-house authorities would never have occurred but for the negligence of his own agents. (Shearm. & Redf. on Neg., § 25; *MacDonell* v. *Buffum*, 31 How. Pr. 162; *Brown* v. *Elliott*, 45 id. 187; *Delafield* v. *U. F. Co.*, 10 Bosw. 216; *Munger* v. *T. R. R. Co.*, 4 N. Y. 349; *Milton* v. *H. R. S. Co.*, 37 id. 210.) The omission of the word "Utica," in the bill of lading, was proper, as the defendant only contracted to transport to New York. (*Delman* v. *C. R. R. & B. Co.*, 26 Alb. L. J. 389.)

*Chas. L. De Giorgi* for respondent. The carrier is bound at his peril to obey the direction of the bailor or shipper as to the disposition to be made of the goods intrusted to him for carriage; and the delivery of the goods to the carrier, with direction as to their carriage, his acceptance of them, and the payment of the freight, insurance and all charges thereon in advance, have sufficiently been proved. (Hutch. on Carr., § 12, p. 9; § 89, p. 68; § 763, p. 591; Redf. on Carr., §§ 34, 35, p. 25; *Kreuder* v. *Wolcott*, 1 Hilt. 223; *Pitlock* v. *Wells, Fargo & Co.*, 109 Mass. 452.) It was gross and inexcusable carelessness and negligence, if not premeditated malfeasance, on the part of the defendant company, to insert a wrong or fictitious name and a wrong place of destination in its bills of lading. (*Rosebrooks* v. *Dinsmore*, 36 How. 138; *Nat. Bank* v. *Graham*, U. S. Sup. Ct., 9. Rep. 533. Even

if the defendant had not been a carrier for hire, but had voluntarily sent the bill of lading, the defendant company is still liable for the loss and injury and damage to the plaintiff arising from its carelessness, negligence, recklessness or malfeasance. (Hutch. on Car., §§ 5, 6, 7, 17, 18, 19, 23, pp. 4, 5, 6, 12, 13, 15 ; *Shiells* v. *Blackburn*, 1 H. Bl. 158 ; *Wilson* v. *Brett*, 11 M. & W. 113 ; *Coggs* v. *Bernard*, 1 Smith's Lead. Cas. 293 ; *Hutton* v. *Osborne*, 1 Selw. N. P. 420 ; *Kirtland* v. *Montgomery*, 1 Swan, 452 ; *Gray* v. *Mo. Packet Co.*, 64 Mo. 47 ; *Kemp* v. *Coughtry*, 11 Johns. 107 ; *Harrington* v. *McShane*, 2 Watts, 443 ; *Nelson* v. *MacKintosh*, 1 Starkie, 237.) The defendant company was bound to deliver this gold to the consignee personally under its bill of lading. (2 Add. on Cont. [3d Am. ed.] 687, § 961 ; 1 Add. on Torts [Am. note, 1876], 593–595 ; Hutch. on Carr., §§ 357 to 365, inclusive, pp. 288, etc.; *Redmond* v. *Steamboat Co.*, 46 N. Y. 583 ; *Price* v. *Powell*, 3 Com. 322 ; *McAndrew* v. *Whitlock*, 52 N. Y. 40 ; *Gleadell* v. *Thompson*, 56 id. 194 ; *Sprague* v. *N. Y. C. R. R. Co.*, 52 id. 637 ; *Fisk* v. *Newton*, 1 Den. 45 ; *Clark* v. *Masters*, 1 Bosw. 177 ; *Rowland* v. *Miln*, 2 Hilt. 150 ; *McKeon* v. *See*, 4 Rob. 449 ; *Mierson* v. *Hope*, 2 Sweeny, 561 ; *Zinn* v. *N. J. S. Co.*, 49 N. Y. 442 ; 15 Johns. 39 ; 26 Wend. 591 ; 6 Hill, 586 ; 45 N. Y. 184 ; 67 id. 11 ; *M. & G. R. R. Co.* v. *Copeland*, 10 Rep. 625.) No fraud, imposition, deception or mistake will relieve or excuse the carrier from responsibility for delivery of goods to the wrong person, either by himself or by his servants, agents or warehousemen at the terminus of his route. (Hutch. on Carr., §§ 344–354 ; Redf. on Carr., § 103, p. 88 ; § 318, p. 234 ; *Ostrander* v. *Brown*, 15 Johns. 39 ; *Hawkins* v. *Hoffman*, 6 Hill, 588 ; *Collins* v. *Burns*, 4 J. & S. 518 ; *Houston and T. & C. R. R. Co.* v. *Adams*, 6 Reporter, 793 ; *Matteson* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 381 ; 6 Johns. 170 ; 11 id. 107 ; 42 N. Y. 212 ; *Price* v. *O. & S. R. R. Co.*, 50 id. 213.) Depositing the goods in the warehouse of the custom-house of New York will not shield the carrier from responsibility for the loss of the gold.  U.

S. R. S. [2d ed.] §§ 2785, 2809, 2880, 2887, 2888, 2965, 2966, 2971; Redf. on Carr., § 206, p. 166 ; *McAndrew* v. *Whitlock*, 52 N. Y. 40; *Russell* v. *Livingston*, 2 Smith, 515 ; *Golden* v. *Romer*, 20 Hun, 438.) Transportation of goods includes safe delivery, and they are at the risk of the carrier until delivery is complete. (2 Add. on Cont. [3d Am. ed.], §§ 953, 954, 955, pp. 670, etc.; § 977, p. 713 ; Redf. on Carr., §§ 24, 25, pp. 18–20; *DeMott* v. *Laraway*, 14 Wend. 225 ; *Parsons* v. *Hardy*, id. 215 ; *McArthur* v. *Hurlburt*, 21 id. 190; *Price* v. *Hartshorn*, 44 Barb. 655 ; *Redpath* v. *Vaughan*, 48 N. Y. 655 ; *Elliott* v. *Rossell*, 10 Johns. 1; *French* v. *B., N. Y. & E. R. R. Co.*, 4 Keyes, 108 ; *Mynard* v. *S. B. & N. Y. R. R. Co.*, 71 N. Y. 180 ; *Sunderland* v. *Westcott*, 40 How. 468 ; *Edsall* v. *C. & A. R. R. & T. Co.*, 50 N. Y. 661 ; *Curtis* v. *D., L. & W. R. R. Co.*, 74 id. 116 ; *Alexander* v. *Greene*, 7 Hill, 533 ; *Wells* v. *S. N. Co.*, 4 Seld. 375 ; *Faulkner* v. *Hart*, 82 N. Y. 413.) The bill of lading cannot be taken as the contract between the consignor or shipper and the carrier. (*Bostwick* v. *B. & O. R. R. Co.*, 45 N. Y. 712 ; *Coffin* v. *N. Y. C. R. R. Co.*, 64 Barb. 379; *Sunderland* v. *Westcott*, 40 How. 468 ; *Jones* v. *Ennis*, 18 Hun, 452; *Shiff* v. *N. Y. C. & H. R. R. R. Co.*, 16 id. 278.) Taking all the circumstances of this case into consideration and adding to it the non-accounting for the gold by the defendant's agent or manager in New York, and the spurious bill of lading, conversion or embezzlement of the property may be inferred. (Stevens' Dig. Crim. Law, 248 ; Redf. on Carr., § 103, p. 86 ; *Carpenter* v. *Man. L. Ins. Co.*, 21 N. Y. W. Dig. 379.) Evidence of usage is not admissible to contradict or vary what is clear and unambiguous, or to restrict or enlarge what requires no explanation. (*Thonpson* v. *Riggs*, 5 Wall. 663 ; *Taylor* v. *Ketchum*, 5 Rob. 507 ; *Baker* v. *Squire*, 1 Hun, 448 ; *Hopper* v. *Sage*, 12 N. Y. W. Dig. 78.) Custom or usage, to be binding on parties, must be known to them, or have been so long continued, universal and notorious that all persons may be presumed to have notice of it. (Redf. on Carr., § 249, p. 202 ; *Wadley* v. *Davis*, 63 Barb.

500 ; *Bassett* v. *Lederer*, 1 Hun, 280 ; *Gallup* v. *Lederer*, id. 284; *Boardman* v. *Gaillard*, id. 217; 60 N. Y. 614.)

MILLER, J. This action is founded upon the negligence of the defendant as a common carrier in failing to deliver to the plaintiff a bag of gold which was shipped at Havre on a vessel of the defendant, in which it was transported to New York.

The first question that arises relates to the contract made in reference to the transportation of the bag of gold, and the right of the plaintiff to recover depends very greatly, if not entirely, upon its terms and conditions.

The preliminary negotiations were with one Stenfort, who resided at Gourin, in France, and were conducted by a correspondence with the defendant's agent at Havre. Upon receiving information in regard to the charges and conditions of transportation, Stenfort, on the 23d of November, 1876, proceeded to Rennes, and shipped from there by rail to defendant's agent at Havre, a bag containing 5,000 francs in gold, which bag was securely fastened, and having a label sealed to it upon which he had written the following direction:

" Five thousand francs in gold.

" To Mr., The Chief of Traffic of the General Transatlantic Company, Havre.

" To forward to Mr. Frank Guillaume, 152 and 154 Bleckert street, New York, Utica, America."

The bag of gold, as thus directed, reached Havre on the 24th of November, 1876, and was received by the defendant and placed on board its ship, which was about sailing for New York. On the twenty-sixth of November the chief of traffic wrote a letter inclosing a bill of lading directed to Stenfort at Gourin. This bill of lading provided for the delivery of the bag of gold to M. Guillaume Frank, 152 and 154 Bleckert street, New York, and among other things, contained a clause to the effect that the shipper, his agent, or the owner, by accepting the same, submitted to the stipulations, conditions or exceptions therein contained. This letter could not have reached Stenfort

prior to the twenty-seventh of November, in due course of mail. The defendant's steamer departed from Havre on the twenty-eighth of November. Stenfort sent no reply to the letter and took no steps to advise the defendant of the erroneous statement in the bill of lading, and it becomes, therefore, important to consider whether under the circumstances this bill of lading constituted the contract between the parties.

As a general rule, when goods are delivered to a carrier for transportation, and before the goods are shipped, a bill of lading or receipt is delivered by him to the shipper, the latter is bound to examine it and ascertain its contents, and if he accepts it without objection, he is bound by its terms; he cannot set up ignorance of its contents, and resort cannot be had to prior parol negotiations to vary them. To take a case out of this general rule, it must appear that before the delivery of the bill of lading the goods have been shipped, so that the shipper could not have reclaimed them had he objected to the contents of the bill of lading. (*Germania Fire Ins. Co.* v. *Memphis and Charlestown R. R. Co.*, 72 N. Y. 90.)

This rule, however, has no application where there was a contract which had been acted upon, and where goods had actually been shipped under such a parol contract, the subsequent receipt of a bill of lading, and the neglect to act thereon did not conclude a party from showing the parol contract. (*Bostwick* v. *Baltimore & Ohio R. R. Co.*, 45 N. Y. 712.)

In 72 N. Y. (*supra*), Rapallo, J., in commenting upon the case last cited, says: "Whether he read it (the bill of lading) or not was immaterial, except upon the question whether his retention of it was evidence of an actual consent to vary the contract under which he had shipped the goods. He was in no situation to object to its terms and could not have reclaimed his goods."

These remarks are peculiarly applicable to the facts presented in the case at bar, as Stenfort was in no situation to object to the wording of the bill of lading, and it is fair to assume that the gold would have been beyond his reach or control before he could have communicated with the defendant's

agent, as the ship had sailed on the twenty-eighth of November, one day at least sooner than he could have notified the agent at Havre of the mistake.   (See, also, *Hill* v. *S. B. & N. Y. R. R. Co.*, 73 N. Y. 351.)

It may be added that Stenfort was informed that the vessel would sail on the twenty-fifth of November, and he received no information to the contrary at any time.   He had thus a right to suppose the steamer had sailed when he received the bill of lading.   The retaining of the bill of lading of itself does not, we think, show an assent to the mistake made in the same.   It was a receipt for the gold sent by him, which he was justified in retaining for his own protection.   The proof does not show directly that he read it or had any knowledge as to the misdirection which it contained, and within the authorities cited we think the retention did not make the bill of lading the contract between the parties.   The utmost that can be claimed from the retention, without notifying the defendant's agent, would be that it was negligence on the part of Stenfort in not communicating to the defendant the error which had been made, and thus furnishing it with an opportunity to correct the same by cable to New York if the ship had already left Havre.   The return of the bill of lading could not have been of any benefit to the defendant except in this manner, and it is at least very questionable whether it would have been regarded as of sufficient importance to require any such degree of attention and vigilance.   It is a reasonable intendment that the defendant's agent in New York would have taken care to see that the bag of gold was delivered to the person entitled to the same and in no way placed it in the power of an entire stranger to claim and dishonestly take possession of the plaintiff's property.

Under the circumstances presented, the question whether there was negligence, which contributed to the loss of the bag of gold on the part of Stenfort in not ascertaining the mistake in the bill of lading and advising the defendant's agent thereof, was one of fact for the consideration of the referee.   He has

found no such negligence ; neither do we think, in view of the evidence, that such a finding would have been justified.

The direction upon the bag of gold and not the bill of lading, being the contract between the parties, the defendant was lawfully bound to deliver the same to the plaintiff, who was the person named therein, or to place it safely where he could obtain possession of it.

As a general rule, if for any reason the consignee does not appear to claim the goods, or does not receive them, it is the duty of the carrier to provide a proper place of deposit ; or, in case of imported goods, subject to duty, to see that they are in proper custody. (*Redmond* v. *Liverpool, N. Y. & Phila. S. Co.*, 46 N. Y. 578.)

It is proved that after the arrival of the defendant's steamer at New York and upon the same day, a permit or order was applied for and obtained to send her cargo to the custom-house warehouse, and the goods thus passed under the control, to a certain extent, of the custom-house officers. We are unable to see that the act of the defendant, in this respect, was wrongful or in any way affected the rights of the parties. The defendant had an undoubted right to make this disposition of the steamer's cargo, while it was not relieved from the responsibility devolving upon it as a common carrier, in exercising superintendence over the property intrusted to it and in caring for and protecting the property from being lost or improperly disposed of. In the discharge of its duty the defendant attempted to notify the owner of the bag of gold of its arrival in New York by sending a bill of lading directed to Guillaume Frank, at 152 and 154 Bleckert street, New York, and a publication was made in two papers in the city of New York containing a notice of the arrival of the steamer, which notice was a copy of the manifest of the vessel, and the entry therein relating to this bag of gold was as follows : " H. F., one bag specie, Stenfort, G. Frank, N. Y."

The bill of lading sent to New York fell into the hands of some person who presented it to the officer of the custom-house, and representing himself to be Guillaume Frank he obtained

the bag of gold.   This result was caused by the act of the defendant in sending the bill of lading to a party who had no interest in it and was not entitled to it.   But for the information thus communicated it may fairly be inferred that the gold would never have reached the party who appropriated it to his own use and the plaintiff would have received the same.

As the bill of lading was not the contract between the parties there was no authority to send it to the person to whom it was directed.   If the direction on the bag was of such a character as to advise the defendant's agent of the party for whom it was intended, or to put it on inquiry as to whom that party was or where he resided, then it was either negligence, or a fair question whether it was not such negligence, in thus sending the bill of lading, to be determined by the referee.   The direction was to the plaintiff, and after his name and street address, and on the next line, were the words "New York, Utica." While it is apparent that the word "Utica" should have been before "New York," it is equally clear that New York is not in Utica, and any person familiar with the geography of the State would at once determine that "New York" should have been placed after "Utica," and that the direction meant the city of Utica, in the State of New York.   These two words being there in juxtaposition there was at least sufficient to suggest an inquiry as to what place was intended, and any such inquiry would have resulted in ascertaining the true residence of the party for whom the bag of gold was intended and to whom it was directed.   Any other construction would leave the word "Utica" without any meaning whatever and render it entirely useless and of no account.

Persons engaged in the transaction of business of this character, where many names and directions are used and given, should exercise ordinary care in determining what was really intended, and it would seem they would not be authorized to disregard the name of a well-known city within the State where the business was done.   In so doing in this case, the defendant was clearly not astute in detecting the meaning of the direction even although it may be regarded as ob-

scure and indefinite. Even if the omission to notice such a mistake or to exercise proper judgment in determining what was intended may not be regarded as negligence *per se*, it would certainly present a question of fact as to the defendant being chargeable with negligence. The referee has found substantially that negligence existed in this respect, and that the defendant was guilty of inexcusable negligence in the performance of its contract, in that it sent a bill of lading to some person other than the real consignee and owner, and thereby placed it in the hands of a stranger and swindler to obtain the gold, and it cannot be said that the result arrived at was not sustained by sufficient evidence. In thus furnishing the means to a stranger to deprive the plaintiff of the money which belonged to him, the defendant was clearly liable in this action and the decision of the referee should be upheld.

As the exercise of ordinary diligence would have enabled the defendant to determine what the direction on the bag was, it cannot be said that the plaintiff was chargeable with negligence in the direction which contributed to the loss of his money.

The misstatement made in the notice published as to the name of the plaintiff, while it may have induced some person to seek to obtain the gold, is not shown to have had that effect, and hence it is not important to consider whether that also can be regarded as negligence on the part of the defendant.

Various objections were urged to the findings of the referee and to his refusals to find as requested. Upon a careful examination we are unable to find that any material error was committed by the referee in any of these rulings.

Other points are raised, but the views which we have expressed upon the questions already discussed render their consideration unimportant.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.