BURNS v. BURNS.

(Circuit Court of Appeals, Second Circuit. May 26, 1904.)

No. 211.

1. FEDERAL COURTS—APPEAL—OPINION OF TRIAL JUDGE—PRESUMPTIONS.

The opinion of a trial judge on conflicting evidence will be presumed correct on appeal.

2. CARRIERS—CONTRACT OF SHIPMENT—DEMURRAGE—BILL OF LADING.

Where libelant contracted to transport coal for respondent consignee, who was the owner, under a verbal agreement as to the terms of freight, and that the demurrage rate should be $6 per day, and libelant did not call respondent's attention to the fact that the shipper had inserted in the bill of lading a provision for demurrage at the rate of 6 cents a ton of cargo for each day's detention, until after the coal had been delivered, and respondent did not discover such change until delivery had been completed, the shipper having no authority to make a new contract for respondent, the latter was liable for the demurrage only at the rate specified in the original contract.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 125 Fed. 432.

Martin A. Ryan, for appellant.

F. W. Park, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. It is not disputed that the libelant was entitled to recover demurrage for 20 days for the detention of his canal boat by the respondent, and the only question is whether he was entitled to recover at the rate of 6 cents per ton per day (which would be $18.42 per day), as claimed by him, or at the rate of $6 per day, as claimed by the respondent.

The respondent engaged the libelant's canal boat to go to St. George, Staten Island, and take on a cargo of coal from Hamilton & Co., for transportation and delivery to the respondent at New York City.

Hamilton & Co. gave a delivery order for the cargo upon the Niver Coal Company, at St. George; the master of the canal boat delivered his order to the Niver Coal Company, and the cargo was put on board; and thereafter the master signed bills of lading in triplicate, presented to him by the Niver Coal Company, leaving two with them, and retaining one himself. In this instrument the Niver Coal Company was named as the shipper of the cargo, the respondent was named as the consignee, the quantity of coal was stated, the freight was stated as "agreed upon," and the rate of demurrage was fixed at six cents per ton of cargo for each day's detention. Upon giving notice of his boat's arrival at New York to the respondent, the master delivered his bill of lading to the respondent, and the respondent retained it without examination and without objection. After the cargo had been discharged the libelant claimed demurrage at the rate stated in the bill of lading. The respondent claims that upon engaging the canal boat

¶ 2. Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

he made a verbal agreement with the libelant not only as to the terms of the freight, but also as to the demurrage, and that the demurrage rate was to be $6 for each day's detention. The court below, upon conflicting testimony, found this contention in favor of the respondent. His opinion is presumably correct, and, upon reading the proofs, we are fully satisfied with his finding.

It is urged for the appellant that by receiving the bill of lading after accepting the cargo the respondent assented to the terms of the bill of lading, including the demurrage rate. Ordinarily, when goods are delivered to a carrier for transportation, and a bill of lading is delivered to the shipper, the latter is bound to examine it and ascertain its contents, and, if he accepts it without objection, he is bound by its terms, and resort cannot be had to prior parol negotiations to vary it, nor can he set up ignorance of its contents. On the other hand, if the goods are accepted for transportation by the carrier without any receipt or bill of lading being issued, the subsequent delivery to and acceptance by the shipper or his agent of such an instrument will not constitute a binding contract, for in such cases there is no consideration for the subsequent agreement. Perry v. Thompson, 98 Mass. 249; Bostwick v. Balt., etc., R. R. Co., 45 N. Y. 712. Whether the fact that the bill of lading in the present case was prepared by the Niver Coal Company is of any consequence, in view of its not having been delivered until the cargo had been accepted by the carrier, further than as evidencing the assent of that company to the terms of demurrage, need not be considered. That company had no authority to make a new contract for the respondent, and the real question is whether what subsequently took place between the master and the respondent conclusively established a new contract between the libelant, whose agent the master was, and the respondent. Doubtless the consignee who receives the goods under a bill of lading is ordinarily liable to pay the freight or demurrage stipulated for in the instrument, although payment may not have been exacted before the delivery of the goods. But we think this rule does not apply where he is the owner of the goods, and they have been transported under a different contract with him by the carrier, and the goods are delivered without any new understanding between him and the carrier. The case of Old Colony R. R. v. Wilder, 137 Mass. 536, is in point. In that case the question was whether the consignee, who had bought goods upon which the consignor was to pay the freight, accepted the goods marked so as to make the freight payable on delivery; and it was held that, as there was no evidence of a demand of the freight by the carrier before delivery, the acceptance was merely evidence, but not conclusive evidence, of a promise by the consignee to pay the freight. The court treated the case as though the goods had been accepted under a bill of lading by the terms of which the freight was payable by the consignee, and said that if the defendant accepted the goods, knowing the carrier looked to him for the freight, the law would imply a promise to pay it, but, if he had not such knowledge, no promise would be implied. In the present case the master knew, or was bound to know, that the Niver Coal Company had inserted in the bill of lading terms with respect to the demurrage which the respondent had not authorized; but he did not

call respondent's attention to the change until after he had delivered the coal, and the respondent did not discover the change until the delivery had been completed. There was marked carelessness upon the part of some employé of the respondent, as well as of some employé of the Niver Coal Company, and we are unable to doubt that the libelant availed himself of the circumstance to put forward a claim which he knew was without merit.

The decree is affirmed, with costs.