## UNITED STATES v. UNITED STATES STEEL PRODUCTS CO.

## UNITED STATES STEEL PRODUCTS CO. v. UNITED STATES.

District Court, S. D. New York. July 13, 1928.

**1. Shipping ☞106(1)—Bill of lading, accepted by shipper on delivery of goods to carrier, constitutes contract of carriage.**

A bill of lading, accepted by a shipper on delivery of goods to a carrier, constitutes contract of carriage between them.

**2. Shipping ☞106(5)—Shipper, delivering bill of lading to another, is not relieved from obligations evidenced by bill.**

If shipper delivers bill of lading to another, and thereby transfers title to goods, he is not relieved from contractual obligations evidenced by bill of lading, nor does carrier's delivery of goods to consignee necessarily have that effect.

**3. Shipping ☞150, 173—Carrier may look to shipper primarily obligated to pay freight, demurrage, etc., and need not seek payment from consignee.**

If, under terms of bill of lading, shipper is primarily obligated to pay freight, demurrage, or other charges, carrier may look to him alone, and need not enforce lien on goods, or seek payment from consignee on latter's promise, inferred from his acceptance of goods.

**4. Shipping ☞150, 170—Shipper's obligation to pay freight, demurrage, and other charges after delivery to consignee is purely contractual.**

Obligation of shipper under terms of bill of lading to pay freight, demurrage, or other charges after delivery of goods to consignee is purely contractual, and in each case depends on construction of bill of lading.

**5. Shipping ☞143—Consignor cannot recover damages from carrier based on tort, after consignor has parted with title to goods.**

Consignor cannot recover from carrier damages flowing from injury to goods, where consignor's property interest in goods ceased prior to injury.

**6. Shipping ☞132(2)—In carrier's libel under bill of lading for damages in reconditioning cargo, shipper held entitled to file cross-libel for breach of contract.**

On libel by carrier to recover under bills of lading charges incurred by carrier in reconditioning goods alleged to have been damaged without fault chargeable to carrier, held that, notwithstanding delivery by shipper to consignee of bills of lading, thus parting with title, shipper was entitled by cross-bill to sue carrier for any breach of contract by carrier on shipper filing an instrument ratifying suit against carrier, executed by consignee.

**7. Shipping ☞143—Carrier held not entitled to recover of shipper expenses of reconditioning cargo damaged by steam from broken steam pipe, where failure to discover break was due to negligence of watchmen.**

Under clause in bills of lading permitting carrier to recover any special charges in respect to cargo incurred by damage from defects, if carrier exercised due diligence to make steamer seaworthy and have her properly manned, equipped, and supplied, held, that carrier was not entitled to recover of shipper expenses incurred in reconditioning cargo of steel damaged by steam escaping from break in steam pipe, in view of evidence that steam had been escaping for some time, and that failure to discover it promptly was due to inattention and neglect of watchmen, who in their rounds should have discovered steam escaping from ventilator, thus justifying finding that owner did not exercise due diligence to have vessel properly manned.

In Admiralty. Libel by the United States, as owner of the steamship Alloway, against the United States Steel Products Company, wherein respondent filed a cross-libel. Original libel dismissed.

Libel in admiralty of the United States of America, owner of the steamship Alloway, against United States Steel Products Company, shipper of certain steel sheets delivered to libelant for carriage to Yokohama and Kobe, Japan, on board said steamship, to recover certain charges incurred by the libelant in discharging the steel after it was laden on the vessel, but before the commencement of the voyage, in order that it might be reconditioned before being carried forward to destination; the steel having been damaged by steam escaping from a steam pipe in the hold of the vessel in which the steel was laden. Libelant's right to recover is predicated upon a clause contained in the bills of lading reading as follows:

"If the owners shall have exercised due diligence to make the steamer in all respects seaworthy, and to have her properly manned, equipped, and supplied, it is hereby agreed that, in case of * * * damage * * * resulting * * * from any defect in the steamer, her machinery or appurtenances, or from unseaworthiness whether existing at the time of shipment or at the beginning of the voyage (provided the defect or unseaworthiness was not discoverable by the exercise of due diligence) the shippers' consignees or owners of the cargo shall nevertheless pay * * * any special charges incurred in respect of the cargo; * * * all with the same force and effect and to the same extent as if such * * * damage * * * had not resulted from or been occasioned by * * * any defect or unseaworthiness."

The steel was laden on board the vessel at New York on February 8, 1922, and placed in the hold of the ship. On the morning of February 19th steam was found escaping from one of the ventilators leading to this hold. When the hatch covers were removed, the hold was found to be full of steam. Aft-

er the steam supply had been cut off, inspection of the hold disclosed that a 1½-inch galvanized iron steam pipe in a casing of 2x6 planks was leaking, due to a split in the seam or weld of the pipe several inches in length. It was quite apparent that steam had been escaping for some time, as the whole cargo hold was wet with steam, "everything dripping with water around the bulkheads, the deck hatches, and all around." The second officer, who first inspected the hold, testified that the steam must have been pouring into the hold for some time in order to cause the condition which he observed and that it may well have been going on for several hours. The leak was actually discovered shortly after 7 o'clock in the morning. During the night neither the master nor the chief engineer was on board. The second mate, who was the officer in charge, and the second assistant engineer, who was on watch, were both asleep. The first assistant engineer was also asleep.

Two watchmen were employed on deck during the night, one from 3 in the afternoon until 11, the other from 11 to 7 in the morning. These men were furnished to the ship by a business firm engaged in furnishing guards and watchmen to steamships. Neither of these men were called as witnesses. One of them was said to have died, and the absence of the other was not explained. When employed by the concern which furnished them to the ship, no investigation was made as to their qualification, except that one had credentials indicating that he was a retired captain, who at the age of 50 was seeking employment as a watchman. It also appears that the Barber Steamship Line furnished a roundsman, whose duty it was to supervise the watchmen aboard the vessels at its pier, and that a roundsman was also employed by the concern which furnished the watchmen, for the same purpose. Neither of the roundsmen was called as a witness, and there is no evidence that either was aboard the ship during the night. It is entirely clear that the original break in the pipe resulted from an inherent defect in the welding of the pipe, which was not discoverable by inspection.

Prior to the date when the steel was unladen from the vessel in order to be reconditioned, the respondent delivered the bills of lading to the purchasers to whom it had sold the steel, and received payment in full under its contract of sale. It has, however, filed a cross-libel, seeking to recover from the libelant damages for breach of the contract to transport the steel as agreed in the bills of lading, and in this cross-libel it has in substance alleged that, prior to the filing of the cross-libel, various consignees in foreign countries became for value the owners and holders of the bills of lading, and entitled to the delivery of the goods in accordance with the provisions thereof, and that "by reason of the premises your cross-libelant, and the said various consignees on whose behalf and for whose benefit this cross-libel is filed, have sustained damage." After the steel had been reconditioned, it was finally transported on another vessel to destination, and there delivered to the holders of the bills of lading without collection of the libelant's disbursements in connection with unlading the cargo, so that it might be reconditioned.

Charles H. Tuttle, U. S. Atty., of New York City (Harold F. Birnbaum, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Bigham, Englar & Jones, of New York City (Henry N. Longley and Roger H. Loughran, both of New York City, of counsel), for respondent.

THACHER, District Judge (after stating the facts as above). The goods having been delivered to the consignees without collection of the charges in question, each party questions the right of the other to sue, and these questions may be determined before considering the merits.

[1-4] As to the right of the United States, as owner of the vessel, to sue the United States Steel Products Company, as shipper of the steel, for the charges incurred and claimed to be owing under the terms of the bills of lading, it may be said that a bill of lading accepted by a shipper upon delivery of goods to a carrier constitutes the contract of carriage between them. If the shipper delivers the bill of lading to another, and thereby transfers title to the goods, he is not relieved from the contractual obligations evidenced by the bill of lading. Nor does the carrier's delivery of the goods to the consignee necessarily have that effect. If, under the terms of the bill of lading, the shipper is primarily obligated to pay freight, demurrage, or other charges, the carrier may look to him alone, and need not enforce his lien on the goods, or seek payment from the consignee upon the latter's promise, inferred from his acceptance of the goods. Main Island Creek Coal Co. v. C. & O. Ry., 23 F. (2d) 248 (C. C. A. 6th); Davis v. Smokeless Fuel Co. (C. C. A.) 196 F. 753; Tweedie Trading Co. v. Pitch Pine Lumber Co., 146 F. 612 (D. C. S. D. N. Y.). The obligation of the shipper to pay such charges after

delivery of the goods to the consignee is purely contractual, and in each case depends upon the proper construction of the bill of lading. L. & N. R. Co. v. Central Iron Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900.

[5, 6] As to the right of the consignor to recover from the carrier damages flowing from injury to the goods after he has parted with title, the authorities agree that there can be no recovery based upon the tort if the consignor's property interest in the goods ceased prior to the injury. In an action founded upon the contract of carriage (i. e., the bill of lading), the Circuit Court of Appeals of this circuit recently said arguendo that the buyer consignee, "and he alone," can sue when the consignor has parted with title to the goods. Transmarine Corp'n v. Levitt & Co., Inc. (C. C. A.) 25 F.(2d) 275. In that case it was held that a consignor, who had parted with title, and had later retaken the goods upon the consignee's refusal to accept them, could sue the carrier. There was no occasion for the court to consider whether the consignor, after parting with title, might sue, not in his own right, but in the consignee's behalf, and in order to protect the consignee's interest. Such suits of a representative character are often allowed in admiralty, because of the absence of the real parties in interest abroad. Thus, for example, in a situation analogous to that presented at bar, the consignees of a cargo, part of which belonged to them and the balance to the consignor, were allowed to sue to recover, not only that part of the cargo which belonged to them, but that which belonged to the consignor as well. The North Carolina, 15 Pet. 40, 49, 10 L. Ed. 653. It is a matter of some commercial importance that ·such practice be allowed in the administration of the maritime law. The case at bar presents a peculiarly pertinent illustration of the great inconvenience which may result from denial of the right thus to proceed. Here it is asserted that by special agreement the consignor is liable for special charges incurred by the carrier in reconditioning goods damaged without fault chargeable to it. The question for determination is whether or not, under the terms of the bills of lading, the carrier is responsible for this damage. Unless by cross-bill, and upon proof that the fault lay with the carrier, the consignor may recover in behalf of the consignee, the judgment may not finally determine the rights and obligations arising out of the contract. Situations will often arise where, by virtue of special agreements contained in bills of lading, the carrier may have a right to recover against the consignor, while the consignee may have a right to recover against the carrier. If by a strict enforcement of the common-law rule stated in Krulder v. Ellison, 47 N. Y. 36, 7 Am. Rep. 402, where it was held that a vendor who had parted with title could not sue for the loss of another's goods, the right of the consignor to sue in admiralty in behalf of the consignee is destroyed, great confusion and inconvenience will attend the enforcement of rights and obligations constantly arising in the daily conduct of international trade. I do not believe that what was said in Transmarine Corp'n v. Levitt & Co., supra, can properly be pushed to such a conclusion.

In Northern Commercial Co. v. Lindblom, 162 F. 250 (C. C. A. 9th), it was held that a consignor, after having parted with title upon delivery to the carrier, was entitled to maintain an action against the carrier for breach of the contract of carriage as the trustee of an express trust, and for the benefit of the consignee. This rule should be applied, at least to the extent of holding that the consignor may, if sued by the carrier upon the special contract of carriage, by cross-bill, sue the carrier for any breach of the contract by the carrier, provided, of course, that the consignee does not object to the assertion of claim in his behalf. Certainly the libelant, who has sued upon the special contract, should not be heard to object to the countersuit for its own breach, provided it will not be subjected to a second suit by the consignee. In the case at bar such possibility may be eliminated by requiring the consignor to file, before entry of any decree in its favor upon the cross-libel, an instrument ratifying the suit against the carrier, executed by the consignees. The North Carolina, supra.

[7] Coming to the merits, the carrier's right to recover its contribution to the expenses of reconditioning the steel is predicated upon the clause already quoted from the bill of lading. Disregarding the obvious printer's error in using an apostrophe instead of a comma after the word "shippers," the clause clearly imposes a primary obligation upon the shippers to pay the charges under the conditions recited. One of these conditions, however, is that the owners shall have exercised due diligence to make the steamer in all respects seaworthy, and to have her properly manned, equipped, and supplied. In so far as the original defect in the steam pipe is concerned, this duty was fully performed. But it is entirely clear, I think, that little, if any, damage would have been suffered, had the leak in the pipe been promptly dis-

covered. Failure to discover it promptly was unquestionably due to the inattention and neglect of the watchmen, who in their rounds on deck should have discovered steam escaping from the ventilator. The failure to call either of these men, or the roundsmen whose duty it was to see that they were active in the performance of their duty, coupled with the failure to make any adequate investigation of their competence, and the fact that a competent watchman would certainly have discovered the trouble, justifies the finding that the owners did not exercise due diligence to have the vessel properly manned.

Under these circumstances, there can be no recovery by the libelant under the clause in question, and the respondent is entitled to a decree on its cross-libel for breach of the contract of carriage, upon filing proof that the consignees have ratified its suit upon the cross-libel. If the parties are unable to agree upon the amount of the recovery, the decree may contain the usual provision for reference.

The original libel will be dismissed, with costs.